# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-SA-00370-SCT

*ENCOMPASS HEALTH REHABILITATION
HOSPITAL OF FLOWOOD, LLC, AND
MISSISSIPPI STATE DEPARTMENT OF
HEALTH*

*v.*

*MISSISSIPPI METHODIST HOSPITAL AND
REHABILITATION CENTER, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/2023 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| TRIAL COURT ATTORNEYS: | ALLISON CARTER SIMPSON |
| | MATTHEW DAVID SITTON |
| | THOMAS L. KIRKLAND, JR. |
| | CAROLINE CAMPBELL LOVELESS |
| | BRANT JAMES RYAN |
| | KATHRYN RUSSELL GILCHRIST |
| | MARC JAMES AYERS |
| | SHELDON G. ALSTON |
| | ROBERT LANE BOBO |
| | BETTY TOON COLLINS |
| | BARRY K. COCKRELL |
| | CASSANDRA S. WALTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | KATHRYN RUSSELL GILCHRIST |
| | CASSANDRA S. WALTER |
| | BRANT JAMES RYAN |
| | MARC JAMES AYERS |
| ATTORNEYS FOR APPELLEE: | THOMAS L. KIRKLAND, JR. |
| | ALLISON CARTER SIMPSON |
| | MATTHEW DAVID SITTON |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | VACATED AND REMANDED - 03/28/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The Mississippi State Department of Health (MSDH) simultaneously entertained two certificate of need applications, one from Encompass Health Rehabilitation Hospital and one from Baptist Memorial Rehabilitation Hospital, for the same category of services. The issue before this Court is whether the MSDH was required to admit evidence of the Baptist certificate of need application or the Baptist certificate of need in the Encompass certificate of need hearing. The MSDH did not admit the Baptist application or certificate, but the chancery court reversed solely on this issue. Because the chancery court's ruling was in error, this Court vacates the chancery court's judgment and remands the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2. The MSDH is authorized to administer state health planning and development. Miss. Code Ann. §§ 41-7-175, -183 (Rev. 2023). As such, MSDH prepares the Mississippi State Health Plan (SHP). Miss. Code Ann. § 41-7-185(g) (Rev. 2023). The SHP "establishes standards and criteria for health-related activities which require certificate of need review . . . ." Miss. Code Ann. § 41-7-173(t) (Rev. 2023). MSDH also implements the state's certificate of need (CON) program. Miss. Code Ann. § 41-7-187 (Rev. 2023). One of the activities that requires a CON is the establishment of a new healthcare facility. Miss. Code Ann. § 41-7-191(1)(a) (Rev. 2023).

2

¶3. Comprehensive Medical Rehabilitation (CMR) services consist of "intensive care service providing a coordinated multidisciplinary approach to patients with severe physical disabilities that require an organized program of integrated services" and are provided by distinct CMR facilities. Miss. Dep't of Health, Div. of Health Plan. & Res. Dev., *FY 2022 Miss. State Health Plan* § 603.01 (effective May 26, 2022), https://msdh.ms.gov/page/resources/16691.pdf. CMR services are divided into two types: Level I , which provides "services for all rehabilitation diagnostic categories[,]" and Level II, which provides "services for all rehabilitation diagnostic categories except: (1) spinal cord injuries, (2) congenital deformity, and (3) brain injury." *Id.* The 2022 SHP determined that the State needed seven Level I beds and ninety-four Level II beds. *Id.* § 603.04. While the numbers and needs for certain types of healthcare facilities are determined by regions of the State, CMR facility needs are determined for the State as a whole. *Id.* § 601 ("The state as a whole serves as a single service area when determining the need for comprehensive medical rehabilitation beds/services."); *Id.* § 603.01; *Id.* § 603.02.

¶4. On February 22, 2022, Encompass Health Rehabilitation Hospital of Flowood (Encompass) submitted a CON application for the establishment of a new CMR facility in Rankin County that would be comprised of seven Level I beds and forty-three Level II beds. Baptist Memorial Rehabilitation Hospital - Madison (Baptist) also submitted a CON application that same day for the establishment of a new CMR facility in Madison County that would be comprised of five Level I beds and thirty-five Level II beds. The number of Level I beds requested by each applicant rendered the applications competing in part, because

3

the State needed seven Level I beds, and the total Level I beds requested between the two CONs was twelve beds. Consequently, Baptist agreed to reduce its Level I request to three beds, and Encompass agreed to reduce its Level I request to four beds. The MSDH then found that the applications were not competing or conflicting, and it recommended approval of both CON applications.

¶5. Mississippi Methodist Hospital and Rehabilitation Center (Methodist) requested a public hearing on both the Encompass CON application and the Baptist CON application as an affected party under statutory law and the CON Manual. Methodist filed a motion to consolidate the two hearings. The hearing officer denied the motion to consolidate because the applications were not competing and did not share common parties or questions of fact and law. She also ruled that the Baptist application would not be admissible as evidence in the Encompass hearing. Encompass's hearing was scheduled first, and occurred over several days in July and August 2022. Baptist's hearing was supposed to occur in September 2022.

¶6. During the Encompass hearing, Methodist was allowed to proffer evidence regarding the Baptist CON application and its relevance to the Encompass proceeding. It did so through an expert witness, who testified that the MSDH needed to hear evidence about both applications because they were offering the same services in the same geographic area. The witness specifically testified that the two applications should be considered competing because of this. The hearing officer again excluded the evidence regarding the Baptist CON application, noting that the CON manual indicates that no evidence regarding other pending applications should be considered.

4

¶7. At the end of the proceedings on August 17, 2022, the hearing officer closed the taking of evidence and the record. She left the record open solely for submission of proposed findings of fact and conclusions of law.

¶8. After the hearing officer closed the Encompass record, Methodist withdrew its request for a hearing on and its objection to Baptist's CON application. As a result, on September 30, 2022, MSDH granted Baptist's then unopposed CON application for a CMR facility. On October 3, 2022, Methodist moved to reopen the Encompass hearing or, in the alternative, to supplement the record, to allow evidence regarding the newly issued Baptist CON. The hearing officer denied Methodist's motion. The hearing officer noted that the hearing had concluded in August and that the hearing and its record were left open solely for the submission of proposed findings of fact and conclusions of law, but it was closed to additional evidence. The hearing officer also noted that she had "been presented with the same argument repeatedly throughout the course of this matter and has ruled consistently throughout that the Baptist CON application is not relevant to the MSDH's consideration of the Encompass-Flowood CON application." The hearing officer noted that the CON manual states that evidence on other pending applications should not be admitted if that evidence is not relevant. The hearing officer found that the Baptist CON application was not relevant for "at least two reasons," namely that the number of beds sought by both applications in the aggregate was still less than the SHP-determined bed need, and that the service area for CMR is the state as a whole, with the Jackson-Metro area being the medical hub of the state and

5

CMR referrals in the Jackson-Metro area consequently being the most numerous in the state. In full, the reasons the hearing officer found the Baptist CON application not relevant were:

> (1) that the number of beds determined by the [MSDH] to be needed based on the formula in the State Health Plan exceeds the aggregate number of beds sought by Baptist and Encompass-Flowood in their two applications. As the Staff indicated in recommending both applications for approval, there are more than enough beds to grant both CONs and still leave an unmet need for beds in the State.

> (2) the service area for CMR beds and services is established in the State Health Plan as the State as a whole, and as Ms. Williams further confirmed, because the State as a whole is the service area, there is no geographic restriction on where CMR beds are placed in the State. What's more, there was a wealth of evidence presented in the Encompass-Flowood Hearing establishing that the Jackson-Metro area is the State's "referral center," and "medical hub" and that the primary source of CMR referrals – short term acute care hospitals – are in the greatest supply here of anywhere in the State. In issuing its simultaneous recommendations of approval for both the Baptist and the Encompass-Flowood applications, the [MSDH] indicated its determination that the placement of the additional CMR beds sought by those applications in Rankin and Madison Counties is appropriate and in substantial compliance with all of the applicable criteria and standards imposed by the CON laws.

The hearing officer concluded that "I do not find that the [MSDH]'s approval of the Baptist CON subsequent to the end of the Encompass-Flowood Hearing changes my opinion as to its relevance to this proceeding."

¶9. On November 10, 2022, the hearing officer issued her findings, recommending that Encompass's CON application be approved. In the findings, the hearing officer addressed the Baptist CON application, noting that the two applications were originally competing, but then were modified and became noncompeting. At the time of the Encompass hearing, Baptist's application was pending, thus the hearing officer ruled that it would not be considered in the course of Encompass's hearing in accordance with the CON manual. The

6

findings noted that "it was only through [Methodist's] withdrawal of its objection to the Baptist Application that Baptist was granted the CON." The findings also noted that, even with the granted Baptist CON, "there is still left an unmet need for additional beds[.]" The hearing officer concluded that "I therefore find that the Baptist Application and CON have no bearing on the analysis and consideration of the instant Application."

¶10. The hearing officer found that the Encompass application was "in substantial compliance with all the relevant criteria and standards[.]" She also found it

> compelling that, unlike many other health services addressed in the SHP, the [MSDH] has deliberately not carved out geographic planning areas around the state for CMR services, but rather has left the entire state as a planning area – evidencing a clear intent not to regulate the location of CMR beds, other than the extent to which the relevant criteria affect location (such as unnecessary duplication, adverse impact on existing providers, etc.).

¶11. The hearing officer further addressed Methodist's objections to the Encompass application. Methodist claimed that it has the capacity to address the need for CMR services in the Jackson area and that Encompass's facility in Rankin County would adversely impact it, as well as adversely impact its ability to provide indigent care.

¶12. The hearing officer then detailed the applicable requirements for a CON. She went into detail regarding the evidence for and against the notion that Methodist has the capacity to meet the entire CMR need in the area according to both the standards set forth in the SHP and the factors in the CON manual. In doing so, the hearing officer specifically addressed Methodist's objections and arguments regarding each factor on which it made arguments or presented evidence. The hearing officer concluded her forty-three page report by recommending that the state health officer approve Encompass's CON application.

7

¶13. The state health officer approved Encompass's CON application, and MSDH issued the CON. Methodist appealed the decision to the Hinds County Chancery Court. The chancery court reversed the matter based on its determination that the MSDH erred as a matter of law, finding that the hearing officer failed to consider whether the Baptist CON application and the subsequent Baptist CON were relevant to Encompass's application. The chancery court did not rule on the substance of the CON application. Specifically, the chancery court found that the hearing officer "committed a clear error of judgment in refusing to even consider whether the Baptist Application was 'relevant to the matter in issue.'" The chancellor stated that "the record is devoid of any discussion as to whether the relevance of the Baptist Application was ever considered by the Hearing Officer." The chancery court did *not* find the Baptist application to be relevant, it merely found that the MSDH did not consider relevance. The chancery court held that

> Given the sheer volume of factual determinations necessary for the recommendation of approval or disapproval of a CON application, a consideration of the relevance of a once competing and later concurrent application for CMR services was necessitated. Upon review, the Hearing Officer may have determined that the Baptist Application was not relevant; however, failure to even consider the same constituted an abuse of discretion. Similarly, this Court finds that the refusal to even consider the Baptist CON in regard to the Encompass Application constituted a clear error of judgment and ultimately an abuse of discretion. After consideration, the Hearing Officer may have determined that the Baptist CON did not have significant impact under the SHP Need Criterion, General Purposes/Policies and General Considerations. However, failure to consider the same is a clear error of judgment and constitutes an error of law.

8

¶14. Encompass and the MSDH appeal. They argue that the hearing officer did consider the relevance of the Baptist CON application and that the Baptist CON application and CON were not relevant to the Encompass proceedings; thus, the hearing officer did not err.

## ANALYSIS

*1.    Standard of Review*

¶15. This Court reviews a chancellor's action on a CON de novo, but is constrained by the same standard of review regarding the MSDH's action on the CON as was the chancellor. ***Miss. State Dep't of Health v. Baptist Mem'l Hosp.-DeSoto, Inc.***, 984 So. 2d 967, 974 (Miss. 2008). Courts' review of CON application decisions is statutorily limited. The chancery court on appeal shall not vacate MSDH decisions on CONs,

> except for errors of law, unless the court finds that the order of the State Department of Health is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the State Department of Health, or violates any vested constitutional rights of any party involved in the appeal.

Miss. Code Ann. § 41-7-201(2)(f) (Rev. 2023). The standard of review for CON decisions is very limited. ***St. Dominic-Jackson Mem'l Hosp. v. Miss. State Dep't of Health***, 728 So. 2d 81, 83 (Miss. 1998). "The decision of the hearing officer and State Health Officer is afforded great deference upon judicial review by this Court, even though we review the decision of the chancellor." ***Id.*** Issues of law are reviewed de novo. ***Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid***, 319 So. 3d 1049, 1054-55 (Miss. 2021). However, decisions regarding admission of evidence are usually reviewed for abuse of discretion. ***Miss. Transp. Comm'n v. McLemore***, 863 So. 2d 31, 34 (Miss. 2003). For

9

administrative agencies, decisions on admission or exclusion of evidence are often in error only if a violation of due process has occurred. *Sherman-Oliver v. Public Emps.' Ret. Sys. of Miss.*, 291 So. 3d 387, 395 (Miss. Ct. App. 2020). Furthermore, courts should give great deference to the MSDH's decision regarding whether to reopen a hearing to admit new evidence. *Baptist Mem'l Hosp.-DeSoto, Inc.*, 984 So. 2d at 984-85.

*2.      Whether the hearing officer considered relevance.*

¶16.    The chancery court was plainly erroneous in its determination that the hearing officer did not at all consider the relevance of the Baptist CON application. While some of the rulings about the Baptist CON application may be open to interpretation in isolation, the hearing officer heard a proffer about the relevance of the Baptist application, and several times ruled that it was not relevant. Even if these rulings were open to an interpretation that the hearing officer did not consider the *substance* of the issue of relevance, the hearing officer's ruling on Methodist's last motion regarding the Baptist CON clarified that the hearing officer considered relevance and found the Baptist application to be irrelevant. The hearing officer wrote two paragraphs, giving two specific and lengthy reasons, why she substantively found the Baptist application to be irrelevant to the Encompass application. The chancery court's finding that the administrative record contains no considerations of relevance is clearly incorrect.

*3.      Whether the hearing officer erred by excluding the pending Baptist CON application.*

¶17.    Methodist argues that the hearing officer excluded the Baptist CON application because she misinterpreted the agency rules. Three rules apply. In reviewing CON

10

applications: 1) granted CONs are considered, 2) competing CON applications are considered, and 3) noncompeting CON applications are generally not considered. From the outset of the Encompass CON application hearing until well after the hearing was closed to evidence, the Baptist CON application was deemed by the MSDH and the hearing officer to be a noncompeting pending CON application. For noncompeting, pending CON applications, the MSDH rule is that the hearing is for MSDH consider the CON application on its own merits, therefore parties must "refrain from discussing or offering evidence concerning any other pending or yet-to-be-offered application that is not relevant to the matter in issue." 15 Miss. Admin. Code Pt. 9-91, R. 4.13.2 (effective Nov. 11, 2023) (internal quotation mark omitted),

https://www.sos.ms.gov/adminsearch/ACCode/00000203c.pdf. MSDH rules determine that pending applications that are *competing* are relevant to consider. Miss. Dep't of Health, Div. of Health Plan. & Res. Dev., *FY 2022 Miss. State Health Plan* § 603.01(5) (effective May 26, 2022),

https://msdh.ms.gov/page/resources/16691.pdf. For noncompeting applications, no interpretation of relevance is given by the rules. Therefore, the rules specify that pending applications are not to be discussed unless relevant, and the rules establish that pending competing applications are relevant. The rules do not specifically discuss pending, noncompeting applications.

¶18. It is clear why competing, pending applications would be considered relevant— because to be granted, a CON application must comply with the projected need set forth by

11

the SHP. Miss. Dep't of Health, Div. of Health Plan. & Res. Dev., *FY 2022 Miss. State Health Plan* §§ 101, 102 (effective May 26, 2022), https://msdh.ms.gov/page/resources/16691.pdf. Therefore, if two or more pending applications would exceed the SHP need if they are both granted, they cannot both be granted, and the MSDH must choose only one. Consequently, the MSDH is not reviewing one competing application as evidence regarding the other competing application; rather, the MSDH is *comparing* the two applications so that it can choose the best one. If pending applications are not competing, meaning both or all could be granted without exceeding the SHP's projected need, then the MSDH could ostensibly grant both or all of the pending applications.

¶19. A noncompeting, pending or yet-to-be-offered CON application is of highly questionable relevance, despite Methodist's arguments to the contrary, because such applications are merely a possibility; the hearing officer does not assume a pending application will be granted. A pending application may be denied and of absolutely no issue. A yet-to-be-offered application may never be offered and thus of absolutely no issue. They are both complete uncertainties; thus, it is logical that such would be deemed irrelevant. The relevancy of something that may or may not actually occur is highly suspect. While the rules of evidence do not strictly apply to CON hearings,[1] the Rules provide that evidence is relevant if "it has any tendency to make a fact more or less *probable* than it would be without

---

[1]"[T]he rules of practice, procedure and evidence, formally observed in courts of law, are relaxed in proceedings before administrative agencies." **McGowan v. Miss. State Oil & Gas Bd.**, 604 So. 2d 312, 317-18 (Miss. 1992).

12

the evidence[.]" MRE 401(a) (emphasis added). Pending applications are speculative possibilities, and Methodist does not explain how that amounts to any probabilities. Additionally, the MSDH is considering a list of factors that it balances in determining whether to grant or deny a CON application, not trying to prove a list of facts. Furthermore, evidentiary rulings in administrative hearings are typically only reversed for violations of due process. *Sherman-Oliver*, 291 So. 3d at 395. Methodist does not argue that due process was violated. The hearing officer, therefore, did not abuse her discretion or violate due process by determining that a speculative, pending, noncompeting application was simply not relevant to the Encompass CON application proceedings.

*4.      Whether the hearing officer erred by excluding the granted Baptist CON.*

¶20.    The hearing officer closed the administrative record to evidence and arguments after the Encompass hearing ended, and Methodist did not object. Then Methodist withdrew its objection to the Baptist CON application, which caused the Baptist CON application to quickly be approved. Methodist immediately moved to enter the now-granted Baptist CON into evidence. In considering CMR CON applications, MSDH is required to consider both existing CMR services and "the presence of valid CONs for services." Miss. Dep't of Health, Div. of Health Plan. & Res. Dev., *FY 2022 Miss. State Health Plan* § 603.01(5) (effective May 26, 2022), https://msdh.ms.gov/page/resources/16691.pdf. Thus, a CON that has been issued is to be considered.

13

¶21. Once a CON hearing is closed, the Hearing Officer, within his or her discretion, may leave the hearing open for certain documents that he or she requests. 15 Miss. Admin. Code Pt. 9-91, R. 4.13.4 (effective Nov. 11, 2023), https://www.sos.ms.gov/adminsearch/ACCode/00000203c.pdf. "No further arguments, briefs, rebuttals, presentations, or submissions of other documentary material by any person or organization of any kind pertaining to any matter will be accepted." *Id.*

¶22. First, Methodist caused this occurrence. Well after the Encompass hearing was closed to evidence, to which Methodist did not object, Methodist unilaterally withdrew its objection to the Baptist CON application, which caused the Baptist CON application to be approved. Then, Methodist immediately moved to reopen the Encompass record to introduce the newly granted Baptist CON. The granted Baptist CON was not newly discovered evidence; it was evidence that changed solely due to Methodist's own actions. It is difficult to credit Methodist's outrage when it knowingly caused this situation.

¶23. Second, the hearing officer thoroughly determined why the Baptist CON was not relevant to the closed Encompass hearing, and it cannot be said that this determination violated due process or abused any discretion. Whether to reopen the CON record to account for new circumstances is a decision for which the MSDH receives great deference. ***Baptist Mem'l Hosp.-DeSoto, Inc.***, 984 So. 2d at 984. Such a decision is generally reversible only if it violates due process. *Id.* at 984-85. Methodist does not argue that the decision violated its due process rights.

5. *Disposition*

14

¶24. The chancery court clearly erred by finding error by claiming that the MSDH failed to determine whether the Baptist CON application was relevant, as the MSDH determined many times that it was not relevant. Further, the MSDH's decision on relevance was not reversible error, nor was its decision not to reopen a closed hearing in error. However, the chancery court failed to address the substance of Methodist's appeal regarding the grant of a CON to Encompass, and the issue is not squarely before this Court, despite Encompass and the MSDH requesting that this Court approve its CON decision on the merits. Therefore, this Court vacates the judgment of the chancery court and remands the case to the chancery court for a decision on the merits.

## CONCLUSION

¶25. The chancery court erred in its determination that the MSDH did not consider the relevance of the Baptist CON application, and the MSDH did not err in its decision on relevance or its decision not to reopen the closed Encompass hearing. Therefore, this Court vacates the chancery court's decision and remands the case to the chancery court for a decision on the merits of Methodist's appeal.

¶26. **VACATED AND REMANDED.**

**KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. RANDOLPH, C.J, CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**RANDOLPH, CHIEF JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶27. I concur with the majority opinion except as to the disposition. Rather than remanding

15

the case to the trial court, I would reverse the March 21, 2023, "Final Judgment" by the Chancery Court of the First Judicial District of Hinds County. I would render a judgment reinstating the November 23, 2022, Final Order entered by the State Health Officer approving Encompass's certificate-of-need application and the issuance of CON No. R-0993 by the Mississippi State Department of Health.

**GRIFFIS, JUSTICE, DISSENTING:**

¶28. The majority finds "that the hearing officer considered relevance." Maj. Op. ¶ 16. I respectfully disagree and find the hearing officer failed to consider whether the certificate of need application from Baptist Memorial Rehabilitation Hospital - Madison, LLC, was "relevant *to the matter in issue*." Maj. Op. ¶ 17 (internal quotation mark omitted) (quoting 15 Miss. Admin. Code Pt. 9-91, R. 4.13.2 (effective Nov. 11, 2023), https://www.sos.ms.gov/adminsearch/ACCode/00000203c.pdf). Accordingly, I would affirm the chancellor's final judgment, reverse the State Health Officer's final order, and remand this case to the Mississippi State Department of Health for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

¶29. Comprehensive medical rehabilitation (CMR) services are intensive care services providing a coordinated multidisciplinary approach that treat patients with severe physical disabilities; they are provided in a freestanding CMR hospital or a CMR distinct part unit. In Mississippi, CMR services are divided into Level I and Level II services.

¶30. The need for CMR services is determined by the Mississippi State Department of Health (MSDH) and is set forth in the MSDH's State Health Plan (SHP). The 2022

Mississippi SHP provides that the state has a need for an additional seven Level I CMR beds and ninety-four Level II CMR beds. The SHP specifies that, for CMR beds and services, the planning area is "the state as a whole." Thus, there are no geographical restrictions imposed by the SHP on how CMR beds and services should be distributed within the state.

¶31. A certificate of need (CON) is required both to establish a new healthcare facility and to provide CMR services pursuant to Mississippi Code Sections 41-7-191(1)(a) and -191(1)(d)(ii) (Rev. 2023). On February 22, 2022, Encompass Health Rehabilitation Hospital of Flowood, LLC (Encompass), submitted an application for a CON seeking to establish a new freestanding CMR hospital in Flowood for fifty CMR beds—seven Level I CMR beds and forty-three Level II CMR beds. That same day, Baptist Memorial Rehabilitation Hospital - Madison, LLC (Baptist), filed a CON application to establish a new freestanding facility in Madison for forty CMR beds—five Level I beds and thirty-five Level II beds.

¶32. MSDH determined that the two applications were competing due to the fact that the combined number of CMR beds sought exceeded the stated seven Level I CMR beds needed under the SHP. In order to receive approval, both Encompass and Baptist agreed to modify their CON applications with Encompass requesting only four Level I CMR beds and Baptist requesting only three Level I CMR beds. Because the applications were no longer competing, MSDH recommended approval of both applications.

¶33. Mississippi Methodist Hospital and Rehabilitation Center, Inc. (Methodist), which operates a CMR facility in Jackson, contested both applications and requested a hearing to consider the impact to the area as to patient need and existing services. According to

Methodist, more than 90 percent of its referrals come from hospitals in the Jackson metro area, including Baptist. Methodist asserts that "[t]he addition of any CMR hospital to the area will lower [its] patient occupancy rate" and that "[t]his reduction will result in Methodist losing both patients and reimbursement, significantly affecting its ability to perform rehabilitation research and care for indigent patients that have no ability to pay for services."

¶34.   A hearing on the Encompass CON application was held first. Pursuant to Section 4.13.2 of the CON Manual, the hearing officer instructed the parties to "please refrain from discussing or offering evidence concerning any other pending or yet to be offered application that is not relevant to the matter in issue." The hearing officer reiterated an earlier pretrial ruling that "in accordance with the CON Manual's express instruction . . . no evidence or discussion would be considered regarding the pending Baptist Application, and that [her] decision and recommendation to the State Health Officer would be made without consideration of the pending Baptist Application."

¶35.   Methodist was allowed to proffer evidence regarding the impact that the Baptist CON application would have, but Encompass maintained a standing objection to the proffer. After the proffer, the hearing officer stated:

> I want to state for the record that the Certificate of Need Manual is clear that no discussions or evidence concerning any other pending or yet to be offered application shall be considered in this hearing. . . . I've already ruled, to limit any evidence or exclude any evidence related to the pending Baptist application. And I stand by that ruling.

18

¶36. After the hearing but before the hearing officer's decision was issued, Methodist withdrew its objection to the Baptist CON application. As a result, MSDH issued a CON to Baptist for its requested CMR beds in Madison.

¶37. Methodist filed a motion to reopen the hearing or, in the alternative, to supplement the record and accept the proferred testimony so that the impact of the utilization of Baptist's CMR beds could be considered regarding the need for additional CMR services in the area. The hearing officer denied the motion, stating, "the Baptist CON application is not relevant to the Department's consideration of the Encompass-Flowood CON application." The hearing officer explained:

> The basis for my determination at the Hearing that the Baptist application was irrelevant was and is that the Manual makes clear that evidence regarding other "pending or yet to be offered" CON applications is not to be admitted into evidence in a hearing on a CON application if that evidence is not relevant. *See* [CON] Manual at 38 (§4.13.2). I found that the evidence Methodist seeks to submit is not relevant for at least two reasons:

> (1) that the number of beds determined by the Department to be needed based on the formula in the State Health Plan exceeds the aggregate number of beds sought by Baptist and Encompass-Flowood in their two applications. As the Staff indicated in recommending both applications for approval, there are more than enough beds to grant both CONs and still leave an unmet need for beds in the State.

> (2) the service area for CMR beds and services is established in the State Health Plan as the State as a whole, and as Ms. Williams further confirmed, because the State as a whole is the service area, there is no geographic restriction on where CMR beds are placed in the State. What's more, there was a wealth of evidence presented in the Encompass - Flowood Hearing establishing that the Jackson-Metro area is the State's "referral center," and "medical hub" and that the primary source of CMR referrals – short term acute care hospitals – are in the greatest

19

supply here of anywhere in the State. In issuing its simultaneous recommendations of approval for both the Baptist and the Encompass - Flowood applications, the Department indicated its determination that the placement of the additional CMR beds sought by those applications in Rankin and Madison Counties is appropriate and in substantial compliance with all of the applicable criteria and standards imposed by the CON laws.

¶38. The hearing officer later entered her findings of fact, conclusions of law, and recommendation, recommending approval of the Encompass CON. In her findings, the hearing officer again reiterated as follows:

[A]t the time of th[e] Hearing on Encompass's application, Baptist's application was a "pending" application and thus I ruled, in accordance with the CON Manual's express instruction, that no evidence or discussion would be considered regarding the pending Baptist Application, and that my decision and recommendation to the State Health Officer would be made without consideration of the pending Baptist Application.

. . . .

[W]hile Baptist's CON increased the number of existing CMR beds, there is still left an unmet need for additional beds, since the applicants had both reduced their requested number of beds. I therefore find that the Baptist Application and CON have no bearing on the analysis and consideration of the instant Application.

¶39. The State Health Officer approved the Encompass CON application and entered a final order. MSDH then issued Baptist's CON. Methodist timely appealed to the chancery court.

¶40. On appeal, the chancellor found that "[t]he issue of whether the Baptist Application was or was not 'relevant to the matter in issue' was never addressed" and that this failure "constituted a clear error of judgment and ultimately an abuse of discretion." As a result, the

20

chancellor reversed the final order approving Encompass's CON application and remanded the case to the MSDH for further proceedings.

¶41. Encompass and MSDH appealed and argued, among other things, that the hearing officer did in fact consider the relevance of the Baptist CON application.

## DISCUSSION

¶42. Under Section 4.13.2 of the CON Manual, "evidence concerning any other pending or yet to be offered application that is not relevant to the matter in issue" should not be considered. Stated differently, under Section 4.13.2, evidence concerning the Baptist CON application should be considered if "relevant to the matter in issue."

¶43. Here, the "matter in issue" is the need for an additional facility and CMR services in the area. Both the CON Manual and the SHP require like facilities and services to be considered in determining the issue of need. Under Section 603.01(5) of the SHP and Sections 8.1(5)(c) and 8.1(8) of the CON Manual, the MSDH shall consider the following criteria: (1) the utilization of existing services and the presence of valid CON's for services, (2) the current and projected utilization of like facilities or services within the proposed service area, and (3) the relationship of the services to the existing healthcare system.

¶44. The majority finds the hearing officer "considered relevance" and "wrote two paragraphs, giving two specific and lengthy reasons, why she substantively found the Baptist application to be irrelevant to the Encompass application." Maj Op. ¶ 16. The hearing officer's findings as to relevancy, however, do not address whether the Baptist CON application is *relevant to the matter in issue*, i.e., the Baptist CON application's impact on

21

the need for additional services in the area and whether the approval of that application would impact the analysis of the Encompass CON application under the applicable CON criteria. Instead, the hearing officer found the Baptist CON application irrelevant to the Encompass CON application because (1) the two CON applications were no longer competing since "there are more than enough beds to grant both CONs and still leave an unmet need for beds in the State," and (2) "there is no geographic restriction on where CMR beds are placed in the State." But simply because there remains a need for additional beds does not take into consideration the impact the Baptist CON will have regarding patient need and existing services *in the applicable area*. In other words, while there remains "an unmet need for beds in the State," are those additional beds needed in the same general area of the State—Jackson, Madison, and Flowood?

¶45. The majority asserts the chancery court "determin[ed] that the hearing officer did not at all consider the relevance of the Baptist CON application." Maj. Op. ¶ 16. But this is not what the chancellor determined. Instead, the chancellor found that the hearing officer "committed a clear error of judgment in refusing to even consider whether the Baptist Application was 'relevant to the matter in issue.'" Thus, while the hearing officer's various orders reflect that she considered relevance, the chancellor was correct when he stated, "[t]he issue of whether the Baptist Application was or was not '*relevant to the matter in issue*' was never addressed." (Emphasis added.)

¶46. The hearing officer did not consider whether the Baptist CON application was "relevant to the matter in issue." In doing so, the hearing officer improperly excluded

22

evidence regarding the Baptist CON application and its impact on the need for a third rehabilitation hospital in the area—one providing identical services to the same patients and an almost identical bed component. In essence, the Encompass CON application was considered in determining the applicable need criteria as though Methodist was the only other provider in the service area to the exclusion of the third provider, Baptist.

¶47. Because the record reflects that the hearing officer failed to consider whether the Baptist CON application was relevant to the matter in issue, the chancellor's decision should be affirmed, the final order approving Encompass's CON application should be reversed, and this case should be remanded to the MSDH for further proceedings.